IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CALLIE D. ROBERTS,<br><br>PLAINTIFF,<br><br>v.<br><br>AAA COOPER TRANSPORTATION, INC., and MARCUS J. BUSH, Individually and Jointly,<br><br>DEFENDANTS. | CIVIL ACTION FILE NO. 2:17-cv-232-RWS |

**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF STEFANOS N. KALES, M.D. AND BRIEF IN SUPPORT**

COME NOW, **AAA COOPER TRANSPORTATION, INC. and MARCUS J. BUSH**, Defendants in the above-styled action (hereinafter "Defendants") and files this Motion to Exclude Testimony of Stefanos N. Kales, M.D., in its entirety, and Brief in Support, showing the Court as follows:

**PRELIMINARY STATEMENT**

Plaintiff employed the services of Stefanos N. Kales, M.D. (hereinafter "Dr. Kales") to serve as an expert in this case. Dr. Kales was asked to provide an expert opinion on "Mr. Bush's fatigue, sleepiness, medical conditions and medical

qualification as these relate to his ability to drive a commercial vehicle and the fatal accident of October 31, 2015." (*See* Dr. Kales Report p. 1, Ex. 2 to Kales Depo., attached hereto as Exhibit "A", pp. 3-4). Dr. Kales provided five (5) separate opinions: (1) Defendant Marcus J. Bush (hereinafter "Mr. Bush") was impaired by fatigue on the date of the subject accident; (2) Mr. Bush was reckless by not pulling his vehicle off the roadway when he realized he was fatigued; (3) Mr. Bush was reckless by driving without proper rest the previous night; (4) Mr. Bush likely suffered from obstructive sleep apnea; and (5) Mr. Bush's medical examiner should have provided a limited-time medical certification or sent Mr. Bush for additional testing. (Ex. A pp. 3-4). Dr. Kales's opinions, however, are flawed for several reasons.

    As to the first opinion, Mr. Bush has admitted that he fell asleep and caused the subject collision – that is not in dispute.

    As to the second and third opinions, Mr. Bush testified in his deposition that he began looking for an exit to pull off the road safely as soon as he began to feel tired. (*See* Deposition of Marcus Bush 89:20-90:6, attached hereto as Exhibit "B"). Dr. Kales, a sleep medicine doctor, is not qualified to testify what is "reckless" or whether it is safer to pull off at the nearest exit or onto the side of the interstate. Dr.

Kales admitted he does not have any information as to the safer course. (Kales 62:14-19).

As to the fourth, Dr. Kales's opinion that Mr. Bush likely suffered from obstructive sleep apnea is based upon grossly insufficient information – he has never meet or examined Mr. Bush and admits that the medical professionals who did examine Mr. Bush found he did not have sleep apena. (Kale 91:15-92:9).

Finally, Dr. Kales's opinion that Mr. Bush should have been given a time-limited medical certification is a criticism of the medical examiner who provided the certification – not Mr. Bush or AAA Cooper.  (Kales Depo. 105:17-19).

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The Standard for Expert Testimony.

Rule 702 of the Federal Rules of Evidence sets forth the standards proffered expert testimony must meet in order to be admitted into evidence.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony if the product of reliable principles and methods; and

>   (d)   the expert has reliably applied the principles and methods to the facts of the case.

FRE 702. The landmark United States Supreme Court case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny are to be considered in evaluating the reliability of proffered expert testimony.

"In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the witness'[s] qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." *L-3 Communs. Titan Corp. v. Patrick*, 317 Ga. App. 207, 209, 729 S.E.2d 505, 507 (2012).[1]  "The court must consider the testimony with the understanding that the burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

In order to be admissible, an expert's opinion must be "based upon sufficient facts or data." FRE 403. An expert's opinion must be based on something more than speculation and conjecture. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 592. Where an expert fails to support his opinions with sufficient facts or data, the

---

[1] In *Daubert*, the U.S. Supreme Court held that a trial judge must act as a gatekeeper in disallowing scientific evidence or testimony that is either irrelevant or unreliable. *Id.* at 589. In *Kumho Tire Co. v. Carmichael*, the U.S. Supreme Court made it clear this standard applies not only to *scientific* testimony but to all types of expert testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999).

expert's opinion testimony is without probative value and is therefore inadmissible. *See Trade AM International, Inc. v. Cincinnati Insurance Co.*, 2010 WL 11508364, *3 (N.D.Ga. 2010).

The trial court's gatekeeping function is designed to ensure "that speculative and unreliable opinions do not reach the jury." *McClain v. Metabolife International, Inc.*, 401 F.3d 1233, 1237 (11th Cir.2005). Irrelevant and unreliable expert testimony has no place before a jury "because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311-1312 (11th Cir. 1999). As stated by the Georgia Court of Appeals, "when the basis of [an expert's] opinion is given and it appears wholly speculative or conjectural, it must follow that his opinion is without foundation and has no probative value. Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict." *Hawkins v. OB-GYN Assocs., P.A.*, 290 Ga. App. 892, 895, 660 S.E.2d 835, 839 (2008).

## II. The Opinions of Dr. Kales are Inadmissible.

### a. Dr. Kales's Opinion (Opinions 1-3) That Mr. Bush Was Fatigued is Irrelevant – Defendants Have Admitted Mr. Bush Feel Asleep.

The first three of Dr. Kales's opinions are that Mr. Bush was fatigued when he admittedly fell asleep: (1) Defendant Marcus J. Bush was impaired by fatigue on the date of the subject accident; (2) Mr. Bush was reckless by not pulling his vehicle

off the roadway when he realized he was fatigued; (3) Mr. Bush was reckless by driving without proper rest the previous night. (Ex. "A"). Those opinions are simply irrelevant. The Defendants have admitted Mr. Bush fell asleep and was negligent. Expert evidence which relates only to admitted issues is not relevant and not admissible. Belk v. Dzierzanowski, 571 F. Supp. 2d 1346, 1347 (N.D. Ga. 2008) ("the Court finds that Defendants' admission of responsibility for causing the accident vitiates any need for expert witness testimony as to Defendants' alleged violations of the pertinent federal regulations… Because liability is no longer in issue, such testimony is unnecessary."). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993).

Of additional concern, in his second opinion, Dr. Kales goes well outside his expertise and concludes, that Mr. Bush was reckless by not pulling his vehicle off the roadway when he realized he was fatigued. For that opinion, Dr. Kales relies solely on the Mr. Bush's testimony on pages 89-90. (Ex. "A" p. 3; Kales Depo. 60:17-20). At worst, Dr. Kales purposefully misstates Mr. Bush's testimony. At best, Dr. Kales goes far outside his expertise.

In the cited testimony, Mr. Bush did not testify that "he should have pulled over, but did not," as Dr. Kales states. Instead, Mr. Bush testified that he started

feeling funny and began looking for an exit because it was dangerous on the side of the road. (Bush Depo. 90:4-6, 91:13-15). Either Dr. Kales purposefully misstates this testimony, and the opinion should be excluded as improper application of the facts; or Dr. Kales' opinion is that it was safer for Mr. Bush to immediately pull to the side of the interstate rather than exit and seek a safe location to park his vehicle, and the opinion should be excluded as outside Dr. Kales's expertise. He admits that he has no information on which course of action would be safer. (Kales Depo. 61:8-62:19). He testified, "I defer to – I don't know the road; so I don't know whether he should have -- it would have been better for him to exit or pull over on the shoulder." (Kales Depo 62:10-13).

To the extent that Plaintiff relies on Dr. Kales' Opinions 1-3 for any other purpose such as showing Defendants were "reckless," those opinions are nothing more than an attempt to invade the province of the fact finder and should not be permitted.

> **b. Dr. Kales Opinion (Opinions 4-5) That Mr. Bush Should Have Been Sent for a Sleep Study Are Either Criticisms of Independent Medical Professionals or Are Not Based in Any Identifiable Standard.**

In opinions 4-5, Dr. Kales concludes (4) Mr. Bush likely suffered from obstructive sleep apnea; and (5) Mr. Bush's medical examiner should have provided a limited-time medical certification or sent Mr. Bush for additional testing.

Whether it is the product of insufficient facts and data or insufficiently reliable principles and methods, Dr. Kales conclusion that Mr. Bush likely suffered from obstructive sleep apnea cannot be admissible. All of Dr. Kales's opinions relating to obstructive sleep apnea in this case are based only on the hearsay information provided in Mr. Bush's DOT medical certification. (Dr. Kales Depo. 44:19-25). Dr. Kales never physically examined Mr. Bush and the only photograph Dr. Kales ever viewed of Mr. Bush was a grainy, black-and-white photocopy of Mr. Bush's driver's license. (Dr. Kales Depo. 91:18-92:4). Specifically, Dr. Kales opined that Mr. Bush suffered from obstructive sleep apnea solely due to Mr. Bush having risk factors associated with obstructive sleep apnea – a BMI of greater than 30 and a neck circumference in excess of 17 inches. (Dr. Kales Depo. 70:16-20, 70:21-71:12).

Dr. Kales admitted that Mr. Bush has never been diagnosed with obstructive sleep apnea, nor has he or anyone with AAA Cooper been informed that he has obstructive sleep apnea. (Dr. Kales Depo. 71:23-72:2, 72:12-14, 72:24-73:2). Dr. Kales admitted that it is the medical examiner's responsibility to determine whether a commercial driver is qualified to drive and whether there are any disorders or ailments that would prevent a commercial driver from being qualified. (Dr. Kales Depo. 73:18-74:8). Likewise, there is no duty of a trucking company to validate a medical examiner's findings. (Dr. Kales Depo. 75:22-76:21, 91:2-10). Ultimately,

Dr. Kales admitted that Mr. Bush was qualified to drive a commercial following an examination by a license medical examiner (Dr. Kales Depo. 104:11-19). The totality of this information cannot be sufficient for Dr. Kales to diagnose a person with sleep apnea.

Finally, Dr. Kales is of the opinion that Mr. Bush should have been sent for a sleep study. However, this is a criticism of the independent medical professionals who examined Mr. Bush and gave him a 2-year medical certificate – not Defendants. Neither Dr. Kales, nor anyone else has identified any requirement that a truck driver or trucking company second guess the medical clearance provided by an independent medical professional. *See e.g. Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:12-CV-3096-AT, 2014 WL 4976773, at *19 (N.D. Ga. Aug. 21, 2014). ("Plaintiff fails to point the Court to any law, regulation, or accepted standard requiring a sleep study under the circumstances presented, and apparently, the consensus criteria has not been universally adopted in the industry."). Moreover, the only standards on which Dr. Kales' relies for Opinions 4-5 were promulgated in 2016 – AFTER the date of this accident. (Ex. 4 & 5 to Kales Depo).

For those reasons, Dr. Kales's testimony should be excluded in its entirety.

## CONCLUSION

For the reasons set forth above, the Court should grant the instant Motion and exclude the testimony of Dr. Kales and prohibit him from testifying at trial.

Respectfully submitted this 30th day of October, 2019.

**HALL BOOTH SMITH, P.C.**

*/s/ Sean B. Cox*
SCOTT H. MOULTON
Georgia Bar No. 974237
SEAN B. COX
Georgia Bar No. 664108
DANIELL R. FINK
Georgia Bar No. 540374
*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, Georgia  30303-1775
(404) 954-5000
(404) 954-5020 Fax

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CALLIE D. ROBERTS,<br><br>    PLAINTIFF,<br><br>v.<br><br>AAA COOPER TRANSPORTATION, INC., and MARCUS J. BUSH, Individually and Jointly,<br><br>    DEFENDANTS. | CIVIL ACTION FILE NO.<br>2:17-cv-232-RWS |

## CERTIFICATE OF COMPLIANCE

The foregoing **DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF STEFANOS N. KALES, M.D. AND BRIEF IN SUPPORT** is double spaced in 14 point Times New Roman font and complies with the type-volume limitation set forth in Local Rule 7.1.

**HALL BOOTH SMITH, P.C.**

*/s/ Sean B. Cox*
SCOTT H. MOULTON
Georgia Bar No. 974237
SEAN B. COX
Georgia Bar No. 664108
DANIELL R. FINK
Georgia Bar No. 540374
*Counsel for Defendants*

-11-

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CALLIE D. ROBERTS,<br><br>    PLAINTIFF,<br><br>v.<br><br>AAA COOPER TRANSPORTATION, INC., and MARCUS J. BUSH, Individually and Jointly,<br><br>    DEFENDANTS. | CIVIL ACTION FILE NO.<br>2:17-cv-232-RWS |

## CERTIFICATE OF SERVICE

I hereby certify that on  this day I have served a copy of the within and foregoing **DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF STEFANOS N. KALES, M.D. AND BRIEF IN SUPPORT** upon all parties to this matter by depositing same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Charles D. Graham, Esq.
The Graham Law Firm
191 Roswell Street
Suite 200
Marietta, Georgia 30060

E. Brian Watkins, Esq.
191 Roswell Street
Suite 200
Marietta, Georgia 30060

Christopher D. Glover, Esq.
Benjamin R. Keen, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327

This 30th day of October, 2019.

**HALL BOOTH SMITH, P.C.**

*/s/ Sean B. Cox*
SCOTT H. MOULTON
Georgia Bar No. 974237
SEAN B. COX
Georgia Bar No. 664108
DANIELL R. FINK
Georgia Bar No. 540374
*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, Georgia  30303-1775
(404) 954-5000
smoulton@hallboothsmith.com
scox@hallboothsmith.com
dfink@hallboothsmith.com