UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

CALLIE D. ROBERTS,

     Plaintiff,

  v.

AAA COOPER TRANSPORTATION,
INC. and MARCUS J. BUSH,
Individually and Jointly,

     Defendants.

CIVIL ACTION NO.

2:17-CV-232-RWS

# **O R D E R**

This case comes before the Court on Defendants' Partial Motions for

Summary Judgment [120, 121]. Also before the Court are Defendants' Motions to

Exclude expert witness testimony [116, 117, 118, 122, 123]. Plaintiff filed a

Motion for Leave to File a Surreply [151] to one of Defendants' motions to

exclude. Both parties filed Motions for Sanctions [126, 140]. Finally, Defendant

AAA Cooper moves for oral arguments [124, 125] on these motions. As a

preliminary matter, the Court finds oral argument is unnecessary because the

briefing is sufficient. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.,

Fla., 402 F.3d 1092, 1113 (11th Cir. 2005) ("Daubert hearings are not required. .

."); St. James Entm't LLC v. Crofts, 837 F. Supp. 2d 1283, 1287 (ND. Ga. 2011) (holding oral argument on summary judgment motions is unwarranted when said motions are sufficiently briefed). Accordingly, AAA Cooper's Motions for Oral Argument [124, 125] are **DENIED**. After reviewing the record, the Court enters the following Order.

## Background[1]

This lawsuit stems from a tractor-trailer and pedestrian accident on Interstate 85 near Braselton, Georgia.

At the time of the accident, Defendant Marcus Bush was employed by Defendant AAA Cooper Transportation ("AAA Cooper") as a commercial tractor-trailer driver. (SOMF, Dkt. [149] ¶¶ 3,4.) On October 31, 2015, Mr. Bush was driving northbound on Interstate 85. (Id. ¶ 12.) Plaintiff Callie Roberts had parked on the interstate road shoulder after running out of gas. (Id. ¶ 1.) Around 1:10 am, Mr. Bush's trailer left the roadway and struck the rear end of Ms. Roberts' vehicle. (Id. ¶ 39[47].) She sustained bodily injuries. This action followed.

---

[1] The following facts are from what is essentially the Parties' combined Statement of Undisputed Material Facts [149]. An apparently identical copy was also filed [150]. Such facts are for context and are undisputed unless otherwise noted. Evidence for any material facts is cited in the analysis.

Ms. Roberts brings a negligence claim against Mr. Bush for his negligent actions in driving the truck, as well as a direct claim against AAA Cooper for its negligent hiring, retention, supervision, training, and entrustment of Mr. Bush.

At summary judgment, many of the issues have already been resolved. It is undisputed that Mr. Bush caused the accident by falling asleep at the wheel. (Id. ¶ 5.) Mr. Bush concedes his behavior was negligent, and AAA Cooper concedes *respondeat superior* liability for his negligence. The primary issues currently before the Court are punitive damages on these claims. The parties also ask the Court to resolve various evidentiary disputes. The Court will first consider Defendants' Motions for Summary Judgment on Ms. Roberts' punitive damages claims, and the direct negligence claim against AAA Cooper. Then, it will address the remaining Daubert and sanction motions.

## Discussion

### I.    Partial Motions for Summary Judgment

Ms. Roberts brings negligence claims against Mr. Bush (and AAA Cooper as his employer) for Mr. Bush's misconduct (Count I), as well as against AAA Cooper alone for negligently retaining, supervising, hiring, entrusting, and training Mr. Bush (Count II). She also seeks punitive damages. Defendants move for summary judgment on both of Ms. Roberts' punitive damages theories. Further,

3

the Parties agree that absent a viable punitive damages claim, Ms. Roberts' direct negligence claim against AAA Cooper cannot proceed. The Court will consider each motion below after first setting out the applicable standards.

    a.  <u>Summary Judgment Standard</u>

The standard for summary judgment is well established. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." <u>BBX Capital v. Fed. Deposit Ins. Corp</u>, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

At summary judgment, the court's function is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." <u>Sears v. Roberts</u>, 922 F.3d 1199, 1205 (11th Cir. 2019) (citing <u>Anderson</u>, 477 U.S. at 249). Accordingly, the Court must "consider the record and draw all reasonable inferences in the light most favorable to the non-moving party." <u>Blue v. Lopez</u>, 901 F.3d 1352, 1357 (11th Cir. 2018).

b.  Punitive Damages Standard

O.C.G.A. § 51-12-5.1(b) provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Tookes v. Murray, 678 S.E.2d 209, 212-13 (Ga. Ct. App. 2009). Additionally, punitive damages may be recovered if "an inference of conscious indifference to the consequences and to the legal rights of others, or to the ordinary obligation of society" might be drawn from the circumstances. Mr. Transmission, Inc. v. Thompson, 328 S.E.2d 397, 399 (Ga. Ct. App. 1985).

The question of whether punitive damages are warranted is ordinarily a matter for the jury. Petrolane Gas Serv., Inc. v. Eusery, 389 S.E.2d 355, 357 (Ga. Ct. App. 1989). "Nonetheless, when the evidence is insufficient for a jury to presume conscious indifference to the consequences, summary judgment on the plaintiff's punitive damages claim is appropriate." Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 1:12-CV-3096-AT, 2014 WL 4976773, at *18 (N.D. Ga. Aug. 21, 2014) (citing Bartja, 463 S.E.2d at 361.).

c.  Defendants' Partial Motion for Summary Judgment [121]

Defendants move for summary judgment on Ms. Roberts' claim for punitive damages against Mr. Bush, for which AAA Cooper concedes it is vicariously liable.[2] Ms. Roberts maintains that construing the facts in her favor, there is at least a jury issue. The Court disagrees for the reasons set forth below.

In the case of a motor vehicle accident, punitive damages against the defendant-driver "are not recoverable where the driver at fault simply violated a rule of the road." Carter v. Spells, 494 S.E.2d 279, 281 (Ga. Ct. App. 1997). Instead, to justify punitive damages, Georgia Law requires the collision result "from a pattern or policy of dangerous driving, such as driving while intoxicated or speeding excessively." Miller v. Crumbley, 548 S.E.2d 657 (Ga. Ct. App. 2001); see also id. at 281.

Of import here, it is well established that only evidence relating to the proximate cause of the collision is relevant to an award of punitive damages

---

[2] Because AAA Cooper concedes that Mr. Bush was acting within the line and scope of his employment at the time of the wreck, if Ms. Roberts establishes that Mr. Bush's conduct warrants punitive damages, AAA Cooper will be vicariously liable for those damages. Fowler v. Smith, 516 S.E.2d 845, 847 (Ga. Ct. App. 1999) (stating that under Georgia law an employer can be "vicariously liable for punitive damages arising from the acts or omissions of their employees or agents if such tortious conduct is committed in the course of the employer's . . . business or within the scope of the servant's . . .employment, and is sufficient to authorize a recovery of punitive damages under OCGA §51.12.5.1.")

against the defendant-driver. See, e.g., Bennett v. McGriff Transp., Inc., 841 F. Supp. 2d 1313, 1316 (N.D. Ga. 2012) (applying Georgia law); Highsmith v. Tractor Trailer Serv., CIV.A. 2:04-CV-164WC, 2005 WL 6032882, at *10 (N.D. Ga. Nov. 21, 2005) (citing Brooks v. Gray, 585 S.E.2d 188 (Ga. Ct. App. 2003)); Carter, 494 S.E.2d at 281 (punitive damages available "where the collision *resulted* from a pattern or policy of dangerous driving") (emphasis added).

The proximate cause of this accident is undisputed—Mr. Bush fell asleep at the wheel, causing his truck to veer off the road and hit Ms. Roberts. There are no allegations or evidence of drug or alcohol use relating to the accident. Yet, Ms. Roberts dedicates the majority of her response brief discussing Mr. Bush's DUI arrest from three years before the accident, and his subsequent attempts to allegedly hide the DUI from AAA Cooper. In doing so, she still fails to establish how Mr. Bush's prior DUI arrest is connected to this accident. Further, because there is no evidence that Mr. Bush's lying to AAA Cooper had any relation to the incident in question, that similarly cannot support this punitive damages claim. See Duling v. Domino's Pizza, LLC, 1:13-CV-01570-LMM, 2015 WL 3407602, at *7 (N.D. Ga. Jan. 14, 2015) (finding evidence defendant-driver lied in medical consultations about a history of syncopal episodes could support punitive damages where the accident was caused by a syncopal episode).

That said, Ms. Roberts does present some relevant evidence. First, she argues that Mr. Bush's phone records indicate he was not sleeping when he said he was and that at most he slept four hours before driving. And second, she contends that Mr. Bush failed to safely pull over to the road shoulder when he started feeling odd.

At the time of the accident, Mr. Bush was working the night shift, which was a new shift for him. He testified that he slept between 1:00 pm and 7:30 pm before getting on the road around 8:45 pm. (Bush Depo., Dkt. [120-1] at 85:7-10, 132:1-134:9.) When he began driving, he had been off work for 13.5 hours (Id. at 132:1-134:9.) However, his phone records show that he had 93 outgoing texts and 14 phone calls during the time Mr. Bush claims he was sleeping. (Cell Phone Records, Dkt. [138-16].) Mr. Bush admits to taking one phone call during his sleeping period, but otherwise maintains he slept about 7.5 hours before driving. (Bush Depo., Dkt. [120-1] at 85.) Ms. Roberts maintains that there was no possible period of consolidated sleep sufficient to be rested on the day leading up to the crash. (Kales Depo. [138-8] at 53-43.)

While on the road, Mr. Bush began feeling funny and started looking for a place he could safely pull over. (Bush Depo., Dkt. [120-1] at 89:20-91:15.) He did not pull over onto the shoulder of the interstate but began looking for the next exit.

(Id.) In the meantime, he fell asleep and hit Ms. Roberts. Ms. Roberts maintains Mr. Bush could have safely pulled over onto the shoulder because he had his reflective triangles and the shoulder was capable of holding his vehicle. (SOMF, Dkt. [149] ¶ 28[36].)

Defendants factually contest Ms. Roberts' position but argue even construed in Ms. Roberts' favor, this evidence is insufficient to justify punitive damages because she has failed to demonstrate that "the collision resulted from a pattern or policy of dangerous driving." E.g., Carter, 494 S.E.2d at 281.  The Court agrees.

Just "falling asleep at the wheel does not support an award of punitive damages." Batts v. Crete Carrier Corp., 1:09-CV-328-TWT, 2009 WL 6842545, at *2 (N.D. Ga. Dec. 14, 2009) (citing Bartja v. National Fire Insurance Co. of Pittsburgh, Pa., 463 S.E.2d 358, 360 (Ga. Ct. App. 1995)). In Bartja, the Georgia Court of Appeals upheld the lower court's dismissal of a punitive damages claim against the defendant driver. 463 S.E.2d at 360. Despite evidence that the defendant-driver had fallen asleep—and tended to fall asleep while driving—the court found his actions did not rise to the requisite culpability required for punitive damages. Id.

Ms. Roberts cites many cases where summary judgment was denied on a punitive damages claim against a defendant-driver. Yet, none of those cases are

helpful here. Some of Ms. Roberts' authority involves a level of conscious indifference to consequences missing from this case. See <u>Karr v. Celadon Trucking Servs., Inc.</u>, 1:16-CV-02587-LMM, 2017 WL 11084520, at *9 (N.D. Ga. Nov. 3, 2017) (evidence that driver consumed drowsiness-inducing drugs before falling asleep at the wheel, in violation of his medical clearance); <u>Duling v. Domino's Pizza, LLC</u>, 1:13-CV-01570-LMM, 2015 WL 3407602, at *7 (N.D. Ga. Jan. 14, 2015) (evidence driver lied in medical consultations about a history of syncopal episodes to return to work and had a syncopal episode, causing the accident in question).

Further, other cases cited by Ms. Roberts involve drivers improperly stopping beside or in the road. <u>Sommers v. Hall</u>, CV 408-257, 2010 WL 1963381, at *3 (S.D. Ga. May 13, 2010) (evidence driver parked in the emergency lane to make an entry in his logbook); <u>Fowler v. Smith</u>, 516 S.E.2d 845 (Ga. Ct. App. 1999) (evidence driver stopped in center lane of the highway without warning devices and could have moved his vehicle). Ms. Roberts does not explain why these cases are helpful to the analysis here, nor does the Court find them to be so. In fact, it is not lost on the Court that Ms. Roberts argues Mr. Bush should have pulled over to the side of the road to avoid punitive damages but relies on

Sommers, where the court found that doing so exhibited an entire want of care. CV 408-257, 2010 WL 1963381, at *3.

At bottom, each of the cases cited by Ms. Roberts had evidence of a relevant pattern of dangerous driving or one at least potentially egregious act by the defendant-driver that caused the accident. See Butler v. Creative Multicare, Inc., CV No. 16-A-60712-5 (denying a motion for summary judgment on punitive damages where the accident resulted from defendant-driver's carelessness and he had sufficient additional instances of carelessness to establish a pattern). Ms. Roberts effectively concedes neither circumstance is present here. Instead, she points to various acts—some relevant, some not—arguing that together they could support an award of punitive damages. She does not cite any authority for such a finding.

The undisputed evidence shows that Mr. Bush had been off work more than 13.5 hours before he began driving. (SOMF, Dkt. [149] ¶ 11.) He had not worked excessive hours or taken any drugs or alcohol. He was not speeding at the time of the accident. Most significantly, there is no evidence that Mr. Bush had ever fallen asleep at the wheel before this accident, or that he had a pattern of driving after not getting enough sleep. Construing the evidence in Ms. Roberts' favor, Mr. Bush did not get enough sleep before driving on this one instance because he stayed up on

his phone when he should have been asleep. And, when he started feeling odd on the road, he chose to look for the next exit instead of pulling onto the road's shoulder.  Such evidence does not establish a pattern or policy of dangerous driving or that Mr. Bush acted with such a willful and wanton lack of care as to entitle a jury to presume he was indifferent to the consequences of his actions. E.g., Carter, 494 S.E.2d at 281.  At most, this evidence supports a finding of negligence or gross negligence, which is insufficient to support an award of punitive damages. See Colonial Pipeline Co. v. Brown, 365 S.E.2d 827 (Ga. 1988) (stating the well-settled principle in Georgia that "negligence, even gross negligence, is inadequate to support a punitive damage award"). Defendants' Partial Motion for Summary Judgment [121] is accordingly **GRANTED**.

> ### d.  AAA Cooper's Partial Motion for Summary Judgment [120]

AAA Cooper argues that insufficient evidence exists for punitive damages on Ms. Roberts' direct negligence claim against AAA Cooper. Further, without a valid punitive damages claim, the parties agree Ms. Roberts cannot proceed simultaneously on this claim and her negligence claim against Bush under these circumstances.

The facts relevant to this analysis are largely uncontested. In 2012, Mr. Bush was arrested in Georgia for a DUI. (Bush Depo., Dkt. [120-1] at 33.) When he

12

applied to work for AAA Cooper in 2013, the DUI charges were pending, but he did not disclose them on his application. (Id. at 55-56.) He eventually pled guilty to reckless driving in 2014. (Id. at 37, 55, 58.)

In considering Mr. Bush for the position in 2013, AAA Cooper obtained a full 3-year motor vehicle history report ("MVR"), which showed only a seat belt violation. (3-Year MVR, Dkt. [120-4].) It also ordered criminal background checks from the two states where Mr. Bush was licensed or previously licensed, South Carolina and Texas, both of which came back clear. (SC Background Check, Dkt. [147-1]; TX Background Check, Dkt. [147-3].) Each year after hiring Mr. Bush, AAA Cooper checked his driving record for citations or accidents. (Annual VDR Checks, Dkt. [120-8].) In the course of his employment, Mr. Bush had four employee violations and a speeding ticket. (Aronhalt Depo., Dkt. [138-2] at 58:3-62:16; Bush Depo., Dkt. [120-1] 60-61.) Ms. Roberts maintains AAA Cooper should have done more and that its failure to do more justifies punitive damages.

To prevail on a punitive damages claim based on negligent hiring, retention or supervision, the plaintiff must come forth with "some facts [to] support a conclusion that the employer acted with such 'an entire want of care' as to 'raise [a] presumption of conscious indifference to [the] consequences.'" Western Indus., Inc. v. Poole, 634 S.E.2d 118, 120–121 (Ga.Ct.App.2006); see O.C.G.A. § 51–12–

5.1(b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."). A plaintiff can shoulder the burden of proof required for punitive damages on a negligent hiring and retention theory "only by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer was flouted a legal duty to check a record showing such violations." Poole, 634 S.E.2d at 120-21. The standard is generally the same on a negligent entrustment theory. See Pace, 2014 WL 4976773, at *18.

While not explicit, from what the Court discerns in her brief, Ms. Roberts argues AAA Cooper flouted a duty by hiring Mr. Bush without thoroughly checking his background and retaining Mr. Bush after receiving his Motor Vehicle Record that showed he lied on his driver's application. Further, she maintains that AAA Cooper had actual knowledge of numerous violations on Mr. Bush's driving record. Finally, she alleges AAA Cooper negligently entrusted Mr. Bush without properly qualifying him for obstructive sleep apnea ("OSA").

### (1)   Flouting Legal Duties

Ms. Roberts claims AAA Cooper flouted a duty to run a criminal background check on Mr. Bush in Georgia and to fire Mr. Bush after the reckless driving conviction showed up on his driving record. Yet, she fails to establish that AAA Cooper had a legal duty to do either.

Ms. Roberts does not dispute that AAA Cooper complied with all federal regulations in hiring and retaining Mr. Bush. See Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391.21, 391.23, 391.25; compare Bartja, 462 S.E.2d at 361-2 (finding summary judgment proper on punitive damages for plaintiff's negligent hiring claim where the driver "committed no actions which could disqualify him as a driver under the applicable federal regulations."), and Smith v. Tommy Roberts Trucking Co., 435 S.E.2d 54, 57 (Ga. Ct. App. 1993) (finding summary judgment improper on punitive damages for plaintiff's negligent hiring claim where the employer willfully flouted its legal duty to check the driver's driving record).

Instead, she maintains that AAA Cooper's failure to follow its own internal procedures and industry standards amounts to the requisite culpability required to create a genuine issue of material fact on punitive damages. But Ms. Roberts has not supported her position with legal authority. She cites two Georgia Court of

Appeals cases for the proposition that "even if an employer complied with federal regulations, it can still be liable for negligent hiring if it violated its own hiring policy." (Pl.'s Resp., Dkt [136-1] at 3 (citing Poole, 634 S.E.2d at 122-23 and Patterson v. Se. Newspapers, Inc., 533 S.E.2d 119, 123 (Ga. Ct. App. 2000).) However, the issue before the Court is not whether AAA Cooper can be liable for negligently hiring Mr. Bush, it is whether AAA Cooper can be liable for *punitive damages* for negligently hiring Mr. Bush. Thus, the rule cited by Ms. Roberts does not support her argument. In fact, it undermines it.

The Poole court found that while the employer could be liable for negligent hiring for violating its own internal policy, the plaintiff could not recover punitive damages on that claim. Id. at 121. Such is precisely the case here. While AAA Cooper's failures to run a criminal background check in Georgia on Mr. Bush and to fire him after discovering his undisclosed reckless driving conviction may amount to negligence, or even gross negligence, that alone does not support punitive damages. See Durben v. Am. Materials, Inc., 503 S.E.2d 618, 619 (Ga.Ct.App.1998) ("Negligence, even gross negligence, is insufficient to support such an award.").

More accurately, Ms. Roberts cites to Karr for the proposition that "an employer's failure to follow internal operating procedures is evidence to support a

16

jury's award of punitive damages." 2017 WL 11084520, at *7.  This is true. AAA

Cooper's failure to follow internal operating procedures is evidence in support of

Ms. Roberts' punitive damages claim, but that alone is insufficient. See Aldworth

Co. v. England, 648 S.E.2d 198, 201 (Ga. Ct. App. 2007) (finding that an

employer's failure to investigate an employee's infractions in violation of internal

operating procedures, along with other evidence, was sufficient for the jury to find

that employer demonstrated an entire want of care to support a limited punitive

damages award).

In Karr, the driver's previous DUI was related to the proximate cause of the

accident. 2017 WL 11084520, at *7; accord Ballard 2011 WL 203378, at *8

("Georgia courts have found a driver's history justified punitive damages where

there was evidence the collision resulted from driving under the influence. . . and

the defendant had a history of DUI."). As previously discussed, that is not the case

here, but evidence connecting Mr. Bush's prior DUI to the accident would

certainly bolster Ms. Roberts' argument. Absent some additional evidence to

demonstrate conscious indifference, AAA Cooper's failure to follow some internal

policies, at most, amounts to gross negligence. Therefore, Ms. Roberts cannot base

her punitive damages claim against AAA Cooper on these alleged failures.

*(2)     Actual Knowledge of Numerous and Serious Violations*

Ms. Roberts' argument that AAA Cooper had actual knowledge of numerous and serious violations on Mr. Bush's driving record similarly fails. Specifically, she points to four accidents that Mr. Bush had while working for AAA Cooper. Mr. Bush: (1) backed into a parked vehicle; (2) damaged a loading dolly; (3) got the truck's landing gear stuck while crossing railroad tracks; and (4) was involved in a spill off a forklift while unloading his truck. (Aronhalt Depo., Dkt. [138-2] at 58:3-62:16.) She also argues that by pulling annual MVRs, AAA Cooper had actual knowledge of Mr. Bush's reckless driving conviction stemming from his DUI arrest. Finally, she notes that Mr. Bush reported a speeding ticket he received to AAA Cooper. (Bush Depo., Dkt. [120-1] 60-61.)

As an initial matter, the Court is not persuaded by Ms. Robert's attempt to conflate AAA Cooper's knowledge of Mr. Bush's reckless driving conviction with knowledge of his DUI arrest. There is nothing in the record to indicate that AAA Cooper had any knowledge of a DUI relating to Mr. Bush. Further, while AAA Cooper factually contests knowledge of Mr. Bush's reckless driving charge, even if it did have such knowledge, Ms. Roberts has not established that Mr. Bush's record is so numerous and serious to suggest that AAA Cooper consciously disregarded the interests of others by hiring, retaining, or entrusting him.

Looking at his driving record as presented by Ms. Roberts, at best, he had two serious driving violations: (1) reckless driving and (2) failing to properly cross a railroad. That said, Ms. Roberts' only authority that the railroad incident was a serious violation is testimony from the deposition of her expert, Michael Napier. (Napier Depo., Dkt [138-5] at 123:6-9.) It is undisputed the remaining infractions or accidents were each low-level. See Wiedeman v. Canal Ins. Co., No. 1:15-cv-4182-WSD, 2017 WL 2673742, at *5 (N.D. Ga. June 21, 2017) (granting summary judgment on punitive damages claim against employer in part because employee's prior tickets for speeding less than 10 miles per hour over the speed limit and disobeying a traffic device were not serious enough). Further, it appears two of the four accidents involved trailer loading and attachment, not driving.

Ms. Roberts argues various cases in support of her position, many of which the Court has already distinguished in the above analysis. Of the remaining cases cited, only two denied summary judgment on direct punitive damages against employers where the driver's record was somewhat comparable to Mr. Bush's. Both are unreported and distinguishable.

First, in La Croix v. Spears Mattress Co., 1:04-CV-1 (WLS), 2005 WL 1924712, at *3 (M.D. Ga. Aug. 10, 2005), the court found that an employer's knowledge of its drivers record that included three moving violations in six years

19

could support a claim of negligent hiring and retention. That said, while denying summary judgment, the court did not discuss the merits of punitive damages on that claim, instead finding it was premature. Id. at *4. This case is one of many in Ms. Robert's argument where she conflates liability for negligent hiring and retention with liability for punitive damages on the claim. All the while, she acknowledges that "[i]n Georgia, it is well settled that "negligence, even gross negligence, is inadequate to support a punitive damage award." Id.

Second, in Butler v. Creative Multicare, Inc., CV No. 16-A-60712-5 the court denied summary judgment on a direct claim for punitive damages on a negligent hiring and entrustment theory where the employer knew of the defendant-driver's history of multiple driving infractions. (Butler Order, Dkt. [138-10].) In Butler, much like other cases relied on by Ms. Roberts, the driver's record of "careless driving" related to the proximate cause of the accident, the driver carelessly hitting a pedestrian in the crosswalk. (Id. at 3-4.) Such causal connection between Mr. Bush's driving record and the proximate cause of the collision is a hole in Ms. Robert's argument previously discussed in this Order. Further, the Butler court specifically denied summary judgment because it counted "27 to 32 incidents (or perhaps more) of arguably poor driving" in the year before the accident. (Id. at 5.) At most, Ms. Roberts evidences five incidents of arguably poor

driving contemporaneous with the accident, plus the prior reckless driving conviction.

Again, the Court finds <u>Bartja</u> most applicable to this analysis. There, the court found the employer was not liable for punitive damages for hiring and retaining a driver with a record that included: (1) driving on the wrong side of the road; (2) disregarding a stop sign; (3) driving his rig into the rear of a parked car in the emergency lane; (4) clipping an oncoming van's side mirror while driving down a highway; and (5) losing control of his personal car when a tie end rod broke. <u>Bartja</u>, 462 S.E.2d at 361-2. Mr. Bush's record is arguably cleaner than the driver in <u>Bartja</u>. <u>See also</u> <u>Hutcherson v. Progressive Corp.</u>, 984 F.2d 1152 (11th Cir. 1993) (finding evidence of four speeding tickets, one improper equipment, and one improper backing citations in the three years before the incident, license suspension for refusal to take alcohol test, and one accident in a company vehicle is insufficient to support punitive damages).

But, most importantly, like the driver in <u>Bartja</u>, "[i]t is undisputed that [Mr. Bush] committed no actions which would disqualify him as a driver under the applicable federal regulations. <u>Bartja</u>, 462 S.E.2d at 361-2. (citing 49 CFR § 391.15.). And "nothing in the record indicates that [AAA Cooper] knew should or should have known that [Mr. Bush] had a tendency to fall asleep at the wheel." <u>Id.</u>

at 362. Accordingly, Ms. Roberts' punitive damages claim cannot proceed based on this theory of liability.

### (3)   Failure to Evaluate for Sleep Apnea

Ms. Roberts also argues AAA Cooper should have properly qualified Mr. Bush for obstructive sleep apnea ("OSA") before entrusting the tractor-trailer to him. While this does have the casual connection missing from most of Ms. Robert's other arguments, it similarly falls short.

This argument is analogous to one made and rejected in another summary judgment order from this District, Pace. 2014 WL 4976773, at *19. Like the employer in Pace, AAA Cooper indisputably subjected Mr. Bush to a medical screening. Id. Six months before the accident Mr. Bush renewed his 2-year medical certificate authorizing him to drive a commercial motor vehicle for AAA Cooper. (Medical Certificate 2015, Dkt. [120-12]; Medical Certificate 2013, Dkt. [120-13].) And, like the driver's doctors in Pace, neither doctor certifying Mr. Bush saw signs of OSA. 2014 WL 4976773, at *19. Instead, like the plaintiff in Pace, Ms. Roberts has hired experts to opine that AAA Cooper should have been aware of the effects of and risk factors associated with OSA and sent him for an evaluation. Id. While this expert testimony might establish that AAA Cooper's failure to screen Mr. Bush "was a breach of its duty to exercise ordinary care," Ms. Roberts "fails to

point the Court to any law, regulation, or accepted standard requiring a sleep study under the circumstances presented. . ." Id. Thus, the Court agrees with the conclusion in Pace that under these circumstances, AAA Cooper's failure to evaluate Mr. Bush for OSU cannot support a claim for punitive damages.

As a final argument, Ms. Roberts urges the Court to consider AAA Cooper's alleged shortcomings in totality to find that cumulatively, they could justify punitive damages. As discussed above, the four identified errors are that: (1) AAA Cooper hired Mr. Bush without thoroughly checking his background; (2) AAA Cooper failed to terminate Mr. Bush after discovering he lied on his application; (3) AAA Cooper failed to fire Mr. Bush after he had four preventable accidents and a speeding ticket while working for AAA Cooper; (4) AAA Cooper failed to have a fatigue management program.

Putting aside AAA Cooper's other well-taken arguments against Ms. Roberts' direct punitive damages claim, at bottom, the evidence is insufficient to infer "an entire want of care as to raise a presumption of conscious indifference to consequences" in hiring and retaining Mr. Bush. Id. Ms. Roberts has evidenced many instances of potentially negligent, or even grossly negligent behavior, but that is not enough to meet the stringent standard for punitive damages. Where, like here, an employer has exhibited "at least some degree of care" there cannot be "an

23

entire want of care necessary to support a jury award for punitive damages. See

Karr,1:16-CV-02587-LMM, 2017 WL 11084520, at *9 (N.D. Ga. Nov. 3, 2017)

(citing Multimedia WMAZ, Inc. v. Kubach, 443 S.E.2d 491, 497 (Ga. Ct. App.

1994). Ms. Roberts, therefore, has not established that she is entitled to punitive

damages based upon AAA Cooper's alleged negligent hiring, retention,

supervision, entrustment, and training of Mr. Bush.

It is undisputed that AAA Cooper is entitled to summary judgment on Ms.

Robert's direct negligence claim. AAA Cooper admits *respondeat superior*

liability for the negligence claim against Mr. Bush. Under such circumstances,

allowing independent claims against the employer would be impermissible double

recovery for Ms. Roberts unless she had a valid claim for punitive damages against

AAA Cooper. E.g., Pace, 2014 WL 4976773, at *19 (providing a thorough analysis

on the well-established rule under Georgia law). Accordingly, AAA Cooper's

motion is **GRANTED**.

## II.    **Remaining Motions**

Defendants' Motions to Exclude Expert Witness Testimony and the parties'

Motions for Sanctions remain for adjudication. Before doing so below, it is worth

noting that the above findings significantly alter the analysis. The Court has

granted summary judgment to Defendants on punitive damages, as well as Ms.

24

Robert's direct negligence claim against AAA Cooper. Further, Mr. Bush concedes liability for the negligence claim against him, to which AAA Cooper concedes *respondeat superior* liability. Therefore, the only remaining issue for trial in the case—to which evidence could be relevant—is compensatory and special damages on Ms. Roberts' negligence claim against Mr. Bush. The Court will evaluate the motions accordingly.

> a.  Motions to Exclude Expert Witness Testimony

Defendants move to exclude five of Ms. Roberts' expert witnesses under Daubert and Rule 702. Three experts' opinions go to liability. The other two provide opinions on damages. The Court will address each after first setting out the applicable standard.

> *(1)    Daubert Standard*

Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 591 (1993) (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichel, 526 U.S. 137, 152 (1999).

The Eleventh Circuit synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied, 172 F.3d 884 (1999).

With respect to the reliability of expert testimony, relevant factors include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate

of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." U.S. v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003)). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." Id.  It is important to note that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible." U.S. v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005).

Of course, a court must heed its role as a gatekeeper and the jury's role as the ultimate fact-finder.  The gatekeeping function "is not intended to supplant the adversary system or the role of the jury." Allison v. McGhan Medical Corp., 184 F.3d 1300, 1311 (11th Cir. 1999).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

> (2)   Liability Experts: Stefanos Kales [116], Sean Alexander
>       [117], and Michael Napier [118]

Defendants move to exclude each of these expert witnesses based on relevancy under Daubert and FRE 702. E.g., Winn-Dixie Stores, Inc. v.

Dolgencorp, LLC, 746 F.3d 1008, 1029 (11th Cir. 2014) ("Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)) (internal quotations omitted).

Defendants argue their testimony is unnecessary because it only goes to Mr. Bush's negligence liability, which he admits. In Responses to each motion, Ms. Roberts argues the expert's testimony is relevant to her direct negligence claim against AAA Cooper and claims for punitive damages.

Given Mr. Bush's liability concession and the Court's above findings, liability and punitive damages are no longer at issue in this case. Further, Ms. Roberts has not argued or established that the testimony of any one of these experts is relevant to the one remaining issue in this case: non-punitive damages on her negligence claim against Mr. Bush. Thus, it is unnecessary to evaluate the reliability of their opinions under Daubert. Defendants' motions to exclude Stefanos Kales, Sean Alexander, and Michael Napier's witness testimony are accordingly **GRANTED**.

(3)    *Damages Experts: Mike McCord [122] and Frank Adams*
       *[123]*

Defendants move to exclude the testimony of Ms. Roberts' damages experts,

Mike McCord and Frank Adams.  Specifically, Defendants maintain that Mr.

McCord's opinions are inadmissible because they are improperly premised on an

assumption he is not qualified to make. And that, as a result, Mr. Adams' opinions

are inadmissible because they are premised on Mr. McCord's. As an initial matter,

Ms. Roberts' Motion to File a Surreply to Defendant's Motion to Exclude Mr.

McCord [151] is **GRANTED**. The Court may consider her arguments in her

attached Surreply [151-1] in the analysis below.

Mr. McCord is a vocational and rehabilitation expert. His opinions in this

case go to Ms. Roberts' diminished earning capacity. Defendants do not challenge

his qualifications as such an expert, but instead argue that he is unqualified to offer

the opinion that Ms. Roberts is limited to sedentary work.

First, any insinuation by Defendants that Mr. McCord cannot rely on

medical records because he is not a doctor is unsupported. "There are many fields

of study that allow experts to review and rely on medical records without there also

being a requirement that the expert be a medical doctor." Haynes v. Lawrence

Transp. Co., 1:13-CV-4292-LMM, 2015 WL 5601942, at *6 (N.D. Ga. Mar. 24,

2015). "Rehabilitation experts routinely rely on medical records in forming their opinions" <u>Id.</u>

Defendants next argue Mr. McCord's conclusion that Ms. Roberts is limited to sedentary work is an unreliable assumption not "based upon sufficient facts or data." F.R.E. 403. In support of their argument, they offer various challenges to Mr. McCord's opinion, such as (1) one of Ms. Roberts' doctors saying he would not place physical restrictions on her; (2) Ms. Roberts' current employment in a job categorized higher than sedentary; (3) Ms. Roberts' job change from a position Mr. McCord said she would not be suited for to one he says she is; and (4) Mr. McCord's deposition testimony that he was not "aware of any doctor, medical professional, that has placed any restriction on Ms. Roberts' physical ability to work." (McCord Depo., Dkt [132-3] at 85:10-86:20.)

That said, in his expert report, he says he consulted with Dr. Rhonda Taubin who in an attached affidavit explains that Ms. Roberts "continues to experience ongoing lower extremity limitation since the accident and has sustained permanent impairment to her lower extremity."[3] (Taubin Affidavit, Dkt. [132-2].) Further, Mr.

---

[3] While seemingly irrelevant to this analysis, any argument that Dr. Taubin was not disclosed to Defendants as a potential witness has been cured by the Court's July 28, 2020 Order [171].

McCord testified that he met with Dr. Taubin and that she helped him "hash[] out" this rehabilitation assessment plan. (McCord Depo., Dkt [132-3] at 60:20-21.)

Defendants' challenges raise some concerns about the support of Mr. McCord's conclusions, but this is an issue that can be better handled by cross-examination. Mr. McCord's methodology and approach are sound. The inconsistencies in his deposition testimony and conflicting evidence in reaching his conclusion are best considered by the jury.

As for Mr. Adams, the majority of Defendants' motion need not be discussed because Mr. McCord is a reliable expert. Defendants still maintain, however, that Mr. Adams should be excluded because he did not do any independent analysis of the evaluation that McCord provided to him. This argument similarly lacks merit. Mr. Adams is an undisputedly qualified economist hired by Ms. Roberts to evaluate her economic loss. "[F]orensic economists regularly rely on information provided to them by attorneys without investigating to confirm that the information is factually accurate." Hernandez v. Crown Equipment Corp., 92 F. Supp. 3d 1325, 1354 (M.D. Ga. 2015) (citing Eastep v. Newman, Civil Action No.  1:12–cv–102 (WLS), 2013 WL  6835197, at *1–3 (M.D. Ga. Dec. 20, 2013). Again, Defendants "may use cross examination to challenge the factual basis for the economist's assumptions, [but] the process of

placing a present value on future expenses is nonetheless reliable and useful for the jury." Id.

Accordingly, Defendants' Motions to Exclude these experts are **DENIED**.

b. Motions for Sanctions

Both parties move for sanctions based on spoliation of evidence. "[F]ederal law governs the imposition of spoliation sanctions." Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 Fed.App'x. 298, 301 (11th Cir. 2009) (internal quotation marks and citation omitted). "Sanctions for spoliation of evidence are intended 'to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process.'" Oil Equipment Co. v. Modern Welding Co., 661 F. App'x 646, 652 (11th Cir. 2016).

To find spoliation, the Court looks at three primary factors: "the extent of prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." Id. And the Eleventh Circuit has listed five factors relevant to the sanctions question: "(1) whether the defendant was prejudiced as a result of the destruction of

evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." Flury, 427 F.3d at 945.

Possible sanctions include a rebuttable presumption that the lost evidence was unfavorable to the spoliating party, a jury instruction, the exclusion of certain evidence, and default judgment. ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1307–09 (11th Cir. 2018). However, any award of fees and costs should be directly related to the spoliation motion and attributable to the spoliating party's misconduct. Carter v. Butts Cty., 2016 WL 1274557, at *11 (M.D. Ga. Mar. 31, 2016); see also Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1287 (M.D. Fla. 2009) ("[T]he amount of fees and costs awarded may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of the sanctionable conduct." (quotation omitted and alteration adopted)).

*(1)    Ms. Roberts' Motion for Sanctions [140]*

Ms. Roberts requests two remedies against Defendants based on their lack of preservation of Mr. Bush's cell phone.  Specifically, that the Court

> (1) strike Defendants affirmative defenses; and (2) issue an instruction to the jury providing that Defendants intentionally destroyed the cell phone, and they can infer that, had it been preserved the information on it would have been indicative of Mr. Bush's lack of sleep and fatigue that he endured when

33

he caused the subject fatal tractor-trailer collision that caused Plaintiff's catastrophic injuries.

(Pl.'s Mot. for Sanctions, Dkt. [126] at 20-21.) Ms. Roberts contends sanctions are necessary because a key issue, in this case, is whether Mr. Bush suffered fatigue or lack of sleep. Therefore Ms. Roberts argues she is prejudiced by not having this information to support her claims against Defendants.

While Mr. Bush should have preserved his cellphone, his culpability is diminished because his phone records had already been turned over to Ms. Roberts. Ms. Roberts argues the phone records were insufficient because there could have been additional relevant information that could have been obtained from the phone itself. Defendants correctly note that Ms. Roberts has not specified what key evidence was destroyed. More significantly, however, Ms. Roberts has not demonstrated that any additional information from Mr. Bush's cell phone would be relevant to a non-punitive damages finding on her negligence claim against Mr. Bush.

Instead, she argues the additional information would go to whether Mr. Bush suffered fatigue or lack of sleep. In light of the Court's above findings on punitive damages and Mr. Bush's acquiescence of negligence liability, that issue is no longer in this case. Further, as required at summary judgment, the Courts' findings on Ms. Roberts' punitive damages claims construed the evidence in the light most

34

favorable to her as the non-movant. This included her argument based on the

cellphone evidence obtained before the phone was lost that Mr. Bush's sleep was

interrupted by phone use. Even still, the Court found such evidence insufficient to

support a punitive damages claim. Ms. Roberts does not argue additional evidence

on the phone would have been helpful for any other reason. Therefore, any

prejudice Ms. Roberts would have suffered due to this spoliation has been cured.

Accordingly, her Motion is **DENIED**.

### (2)   *Defendants' Motion for Sanctions [126]*

Defendants anticipate that Ms. Roberts will seek damages for a brain injury

she suffered as a result of the accident. She claims that the injury caused memory

loss and inhibited her function. As evidence of her memory loss, she testified that

she keeps "memory journals" to make entries anytime something comes up that

she needs to remember. (Roberts Depo., Dkt [126-2] at 122:6-124:2.) Yet, Ms.

Roberts has not produced any memory journals. After numerous requests from

Defendants, she now claims that the journals were lost in a move. (Roberts'

Affidavit, Dkt. [135] at 2.) Defendants ask the Court to: (1) "strike claims;" (2)

prohibit evidence regarding lost wages and alleged memory problems; or (3)

fashion a sanction as the Court deems appropriate.

The Court agrees with Defendants that, given Ms. Roberts' reliance on the memory journals as evidence of her memory loss, their inability to review the journals is highly prejudicial. Further, Ms. Roberts has not offered a reasonable excuse for failing to produce the journals. It is particularly troublesome that she was able to produce "limited updated journal entries," reflecting her medical issues but nothing further. (Defs.' Reply, Dkt. [146] at 10.) All the same, Ms. Roberts' medical evidence and personal testimony are sufficient to support her argument for damages based on short-term memory loss.

The Court finds that the failure to produce the journals is due to negligence, not bad faith. Accordingly, the Court will not give an adverse inference jury instruction. Rather, Defendants will be allowed to offer evidence that they asked Ms. Roberts to preserve the journals but she lost them and thus, the opportunity for the jury to learn what was in them that may have evidenced her memory loss. The Court will give an instruction that allows the jury to make any inference it believes appropriate in light of these circumstances. The parties are invited to include a proposed instruction on this issue in their requests to charge. Defendants' Motion is therefore **GRANTED** insomuch as it seeks this relief.

## Conclusion

For the foregoing reasons, Defendants' Partial Motions for Summary Judgment [120, 121] are **GRANTED**. Defendants' Motions to Exclude Stefanos N. Kales [116], Sean Alexander [117], and Michael Napier [118] are **GRANTED**. Defendants' Motions to Exclude Mike McCord [122] and Frank Adams [123] are **DENIED**. Defendants' Motions for Oral Argument [124, 125] are **DENIED**. Defendants' Motion for Sanctions [126] is **GRANTED**.

Ms. Roberts' Motion to File a Surreply [153] is **GRANTED**. Ms. Roberts' Motion for Sanctions [140] is **DENIED**.

The Court granted limited additional discovery that concludes on September 11, 2020. The parties shall file a Consolidated Pretrial Order within 30 days thereafter. Trial will be scheduled by later Order.

**SO ORDERED** this 19th day of August, 2020.

_____
**RICHARD W. STORY**
United States District Judge